UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIN FRANKLIN, | Case No. EDCV 10-850 JC |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I.  SUMMARY

On June 22, 2010, plaintiff Robbin Franklin ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  On December 1, 2010, the matter was transferred and referred to the current Magistrate Judge.  The parties thereafter filed consents to proceed before the current Magistrate Judge.  On December 23, 2010, the parties filed a Joint Stipulation ("JS") setting forth their respective positions on plaintiff's claims.  On September 16, 2011, the matter was formally reassigned to the instant Court for final disposition.  The Court has taken this matter under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 15, 2004, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 18). Plaintiff asserted that she became disabled on January 10, 2000 due to anxiety and nervousness. (AR 18, 62-63). The ALJ examined the medical record and heard testimony from plaintiff (who was not represented by counsel) on November 15, 2005 ("2005 Hearing"). (AR 178-92; 502-16).

On February 3, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision ("2006 Decision"). (AR 18-24). On January 4, 2007, the Appeals Council denied plaintiff's application for review of the ALJ's 2006 Decision. (AR 5).

On May 21, 2008, in Case No. EDCV 07-129 RC, a judgment was entered in the United States District Court for the Central District of California, reversing and remanding the case for further proceedings due to legal error in the ALJ's findings at step five of the sequential evaluation process. (AR 218-29). The Appeals Council, in turn, remanded the case for a new hearing.[2] (AR 232). On October 28, 2008, the ALJ held a post-remand hearing ("2008 Hearing") during

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] In its remand order, the Appeals Council noted that on January 25, 2007, plaintiff filed another application for benefits. The Appeals Council ordered the duplicate application to be merged with the instant case, and ordered the ALJ to address both applications in his decision. (AR 232).

2

which the ALJ heard testimony from plaintiff, a medical expert, and a vocational expert.  (AR 414-37; 517-40).

On February 2, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision ("2009 Decision").  (AR 205-17; 480-92).  On April 24, 2009, the Appeals Council affirmed the 2009 Decision.  (AR 193; 493).

On November 23, 2009, in Case No. EDCV 09-926 RC, a judgment was entered in the United States District Court for the Central District of California based upon the parties' Stipulation to Voluntary Remand Pursuant to Sentence 4 of 42 U.S.C. § 405(g), reversing and remanding the case for further proceedings. (AR 545-46).  On December 16, 2009, the Appeals Council again remanded the case for a new hearing.  (AR 543-44).  In its remand order, the Appeals Council noted that the 2009 Decision mischaracterized some of the medical evidence, and ordered the ALJ on remand to re-evaluate plaintiff's mental impairment and plaintiff's credibility.  (AR 543-44).  On March 10, 2010, a post-remand hearing was held before a different ALJ ("2010 Hearing") during which the ALJ heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert.  (AR 453-76).

On April 2, 2010, the new ALJ issued his decision, incorporating by reference the 2009 Decision, and supplementing such decision.  (AR 441-49).  The ALJ again determined that plaintiff was not disabled through the date of the decision ("2010 Decision").  (AR 449).  Specifically, the ALJ found:  (1) plaintiff suffered from the following severe impairments:  osteoporosis, obesity, depressive disorder (not otherwise specified), psychophysiological reactions to physical conditions, and personality disorder (not otherwise specified) (AR 443); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 443-44); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b))
///

1  with certain limitations[3] (AR 444); (4) plaintiff could not perform her past relevant
2  work (AR 447); (5) there are jobs that exist in significant numbers in the national
3  economy that plaintiff could perform, specifically porter mail clerk, cleaner and
4  sewing machine operator (AR 447-48); and (6) plaintiff's allegations regarding
5  her limitations were not credible to the extent they were inconsistent with the
6  ALJ's residual functional capacity assessment (AR 446).

7  III.   APPLICABLE LEGAL STANDARDS

8         A.   Sequential Evaluation Process

9         To qualify for disability benefits, a claimant must show that the claimant is
10 unable to engage in any substantial gainful activity by reason of a medically
11 determinable physical or mental impairment which can be expected to result in
12 death or which has lasted or can be expected to last for a continuous period of at
13 least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing
14 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of
15 performing the work claimant previously performed and incapable of performing
16 any other substantial gainful employment that exists in the national economy.
17 Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.
18 § 423(d)(2)(A)).

19        In assessing whether a claimant is disabled, an ALJ is to follow a five-step
20 sequential evaluation process:

21        (1)   Is the claimant presently engaged in substantial gainful activity? If
22              so, the claimant is not disabled. If not, proceed to step two.
23 ///

---

[3] The ALJ determined that plaintiff: (1) could lift and/or carry 10 pounds frequently and 20 pounds occasionally; (2) could sit, stand and/or walk six hours in an eight-hour workday; (3) could occasionally balance, stoop, kneel, crouch, and crawl, and could occasionally climb ramps, stairs, ladders, ropes or scaffolds; (4) could not work on dangerous machinery; and (5) is limited to entry level work and tasks involved with things rather than people. (AR 444).

> (2) Is the claimant's alleged impairment sufficiently severe to limit claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.
>
> (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,

402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that a reversal or remand is warranted because the ALJ (1) failed properly to consider the opinions of plaintiff's treating physician, Dr. Salvador E. LaSala; (2) failed properly to consider the opinions of a state agency reviewing psychiatrist, Dr. A. Schrift; and (3) failed properly to assess plaintiff's residual functional capacity.  (JS at 3-9, 14-17, 19-22).  As discussed in detail below, plaintiff is not entitled to a reversal or remand on any of these grounds.

### A. The ALJ Properly Evaluated the Medical Evidence

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more

weight than a nonexamining physician's opinion.[4] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the

---

[4] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

[physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

Although the treating physician's opinion is generally given more weight, a nontreating physician's opinion may support rejecting the conflicting opinion of a claimant's treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). If a nontreating physician's opinion is based on independent clinical findings that differ from the findings of the treating physician, the nontreating physician's opinion may be considered substantial evidence. Id. at 1041 (citing Magallanes, 881 F.2d at 751). If that is the case, then the ALJ has complete authority to resolve the conflict.[5] On the other hand, if the nontreating physician's opinion contradicts the treating physician's opinion but is not based on independent clinical findings, or is based on the clinical findings also considered by the treating physician, the ALJ can only reject the treating physician's opinion by giving specific, legitimate reasons based on substantial evidence in the record. Id. (citing Magallanes, 881 F.2d at 755); see Magallanes, 881 F.2d at 751-52 (Substantial evidence that can support the conflicting opinion of a nonexamining medical advisor can include: laboratory test results, contrary reports from examining physicians, and testimony from the plaintiff that is inconsistent with the treating physician's opinions.).

### 2. Dr. LaSala

On February 19, 2010, Dr. LaSala completed a Work Capacity Evaluation (Mental) form in which he opined that plaintiff had marked to extreme limitations in her mental abilities and that such limitations would cause plaintiff to be absent
///

---

[5]Where there is conflicting medical evidence, the Secretary must assess credibility and resolve the conflict. Thomas, 278 F.3d at 956-57.

from work on average three or more days per month ("Dr. LaSala's Opinions"). (RT 565-66).

Plaintiff contends that the ALJ improperly rejected Dr. LaSala's Opinions. The Court concludes that a remand or reversal is not warranted on this basis.

First, Dr. LaSala's opinions that plaintiff suffered significant cognitive limitations conflict with and are unsupported by Dr. LaSala's own treatment notes. For example, as the ALJ noted, Dr. LaSala's most recent treatment notes for plaintiff (*i.e.*, Medication Progress Notes dated October 3, 2008 to August 10, 2009) reflect mental status examinations that were, on the whole, within normal limits. (AR 446) (citing Exhibit 24F at 1-6 [AR 559-64]). Prior treatment notes from Dr. LaSala (*i.e.*, from November 19, 2007 to September 3, 2008) reflect mental status examinations that, apart from occasional anxious or depressed mood, were also generally "within normal limits." (AR 212) (citing Exhibit 23F [AR 403-13]). Dr. LaSala's progress notes also indicate that plaintiff's condition improved with treatment. On November 19, 2007, plaintiff reported to Dr. LaSala that she was "feeling better" and had improved sleep, energy and motivation. (AR 212) (citing Exhibit 23F at 12 [AR 413]). On August 4, 2008, plaintiff had "no complaints" and "good sleep." (AR 213) (citing Exhibit 23F at 3 [AR 404]). As recently as May 13, 2009, Dr. LaSala reported that plaintiff had been taking her prescribed medication without side effects and that plaintiff was "doing slightly better" with "improving mood/energy/motivation." (AR 560). Moreover, as the ALJ also noted, Dr. LaSala's finding that plaintiff would be stable if she was compliant with her prescribed medication is inconsistent with the treating physician's assessment that plaintiff suffered significant cognitive limitations. (AR 446) (citing Exhibit 24F at 1 [AR 559]). Therefore, to the extent the ALJ rejected Dr. LaSala's opinions, he properly did so for clear and convincing reasons based on substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (A discrepancy between a physician's notes and recorded observations

and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion.); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). While plaintiff suggests that Dr. LaSala's medication progress notes actually support the treating physician's opinion that plaintiff has significant mental limitations (JS 6-7), this Court will not second-guess the ALJ's reasonable interpretation that they do not, even if such evidence could give rise to inferences more favorable to plaintiff.

Second, the ALJ also properly rejected Dr. LaSala's opinions because they were unsupported by the record as a whole. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). For example, as the ALJ noted, the report of a July 23, 2004 mental examination of plaintiff reflected that plaintiff suffered from depression and anxiety with some decreased energy and insomnia, but otherwise had mental functioning that was within normal limits. (AR 214) (citing Exhibit 2F [AR 121-24]). The examining physician indicated that plaintiff was "stable on [] medication" and that plaintiff's condition was expected to improve with medication management and psychotherapy. (AR 124).

Third, as the ALJ noted, treatment records reflect that plaintiff did not always follow Dr. LaSala's medication prescriptions. (AR 559, 592; see also AR 407, 408). As noted above, Dr. LaSala found that plaintiff's condition would be stable if she was compliant with her prescribed medication. (AR 559). Thus, to the extent Dr. LaSala's opinions are based on plaintiff's symptoms during periods when plaintiff failed without justification to take her prescription medication, such opinions cannot support a disability finding. A claimant who would otherwise be found disabled within the meaning of the Social Security Act may be denied

benefits if she fails to follow prescribed treatment without justifiable cause. See Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); SSR 82-59; 20 C.F.R. § 416.930; see also Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted).

Finally, based in part on the examining physician's July 23, 2004 opinions, the testifying medical expert found no mental limitations for plaintiff beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 465-69). The medical expert's testimony constituted substantial evidence supporting the ALJ's decision since it is consistent with the examining physician's opinions and underlying independent examinations. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"). Any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve. Andrews, 53 F.3d at 1041.

### 3. Dr. Schrift

In an August 9, 2004 Mental Residual Functional Capacity Assessment form, Dr. A. Schrift found, in pertinent part, that plaintiff had marked limitations in her abilities to (i) understand and remember detailed instructions, (ii) carry out detailed instructions; and (iii) interact appropriately with the general public. (AR 140-41). Dr. Schrift opined that plaintiff could "sustain simple repetitive tasks with adequate pace and persistence," could "adapt and relate to coworkers and

[supervisors]," but could not work with the public. (AR 142). Plaintiff contends that the ALJ improperly rejected Dr. Schrift's opinions. The Court disagrees.

The ALJ was not required to discuss at length medical evidence which he did not reject. See Howard ex rel. Wolff v. Barnhart ("Howard"), 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). An ALJ must provide an explanation only when he rejects "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Here, the ALJ stated essentially that he had "read and considered" Dr. Schrift's August 9, 2004 Mental Residual Functional Capacity Assessment form, and that he gave "significant weight" to the opinions expressed therein – which opinions the ALJ found to be generally consistent with plaintiff's residual functional capacity assessment and supported by the evidence as a whole. (AR 447). Plaintiff fails to demonstrate that Dr. Schrift's findings that plaintiff could perform "simple repetitive tasks with adequate pace and persistence," could "adapt and relate to coworkers and [supervisors]," and could not work with the public (AR 142) constitutes significant or probative evidence that is not already accounted for in the ALJ's residual functional capacity assessment for plaintiff which limits plaintiff to "entry level work and tasks involved with things rather than people." (AR 444). Again, the Court will not second-guess the ALJ's reasonable interpretation of the medical evidence, even if such evidence could give rise to inferences more favorable to plaintiff.

### B. The ALJ Properly Considered Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erroneously omitted from plaintiff's residual functional capacity assessment significant mental limitations noted by Dr. LaSala in his February 10, 2010 Work Capacity Evaluation (Mental) form and various progress notes for plaintiff, and limitations noted by Dr. Schrift in his August 9, 2004 Mental Residual Functional Capacity Assessment form. (JS at 19-21). The

Court disagrees. This claim is derivative of plaintiff's other claims and fails for the reasons discussed above.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 23, 2011

                                                    /s/
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE